UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-297-CHL

**CHRISTOPHER C. PIDGEON,**                                                   **Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY,**                             **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint (DN 1) of Plaintiff, Christopher C. Pidgeon ("Plaintiff"). In his Complaint, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). *See* 42 U.S.C. § 405(g) (2012) ("Any individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . ."). Plaintiff filed a Fact and Law Summary. (DN 11.) The Commissioner also filed a Fact and Law Summary. (DN 13.)

The Parties have consented to the jurisdiction of a magistrate judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10.) Therefore, this matter is ripe for review. For the reasons below, the final decision of the Commissioner is **AFFIRMED**.

I.     **BACKGROUND**

Plaintiff filed an application for a period of disability and disability insurance benefits on January 29, 2014. (R. at 199-202.) On December 1, 2015, Administrate Law Judge Candace A. McDaniel (the "ALJ") conducted a hearing on Plaintiff's application. (*Id.* at 39-96.) In a decision dated, February 17, 2016, the ALJ engaged in the five-step evaluation process promulgated by the

Commissioner to determine whether an individual is disabled. (*Id.* at 9-31.) In doing so, the ALJ made these findings:

 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016. (*Id.* at 14.)

 2. The claimant has not engaged in substantial gainful activity since October 27, 2011, the alleged onset date. (*Id.*)

 3. The claimant has the following severe impairments: cerebral trauma, dysfunction of major joints, multiple bone fractures, degenerative disc disease, obesity, organic mental disorder, depression, and history of substance abuse. (*Id.* at 15)

 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

 5. The claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b), but with the following specific limitations: the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally and he cannot reach overhead with his left arm. He can stand and or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday; however, the ability to alternate positions every 30 to 60 minutes where the change would take no more than one to three minutes without leaving the workspace should be allowed. The claimant cannot work around hazards, including unprotected heights or the operation of exposed moving machinery that cuts or grinds and that fails to stop when human contact is lost. He can perform no activities around large bodies of water and cannot climb ladders, ropes, scaffolds, or stairs. The claimant can occasionally stoop, crouch, crawl, kneel, and climb ramps. Additionally, he should have no concentrated exposure to vibration. Use of his left index finger is limited to occasional fine manipulation, but gross manipulation can be performed frequently. The claimant can understand, remember, and carryout simple oral instructions requiring brief learning periods; interact appropriately with supervisors and coworkers for task completion with no interaction with the public for task completion; maintain attention and concentration for two-hour segments throughout an eight-hour workday; and can adapt to routine changes gradually introduced in this setting. (*Id.* at 18.)

 6. The claimant is unable to perform any past relevant work. (*Id.* at 29.)

 7. The claimant was born on April 21, 1975 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (*Id.*)

8. The claimant has at least a high school education and is able to communicate in English. (*Id.*)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills. (*Id.* at 30.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

11. The claimant has not been under a disability, as defined in the Social Security Act from October 17, 2011, through the date of this decision. (*Id.* at 31.)

Plaintiff requested an appeal to the Appeals Council, which denied his request for review on March 15, 2017. (*Id.* at 1-3.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210(a); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Plaintiff is presumed to have received that decision five days later on March 20, 2017. Plaintiff filed this action on June May 11, 2017. (DN 1.)

## II. DISCUSSION

The Social Security Act authorizes payments of disability insurance benefits to persons with disabilities. *See* 42 U.S.C. §§ 401 – 434 (2017). Specifically, anyone who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to benefits. 42 U.S.C. § 423(a)(1); *see also Warner v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

3

lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2017).

A.  **Standard of Review**

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g) (2016); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1994) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

B.  **Five- Step Sequential Evaluation Process**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920 (2018). In summary, the evaluation process proceeds as follows:

(1)  Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

4

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits your physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Herr v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

**C.  Plaintiff's Contentions**

Plaintiff contests the ALJ's Findings Nos. 5, 9, 10, and 11. (DN 11, at PageID # 1855, 1864.) However, Plaintiff fails to offer any significant arguments as to the deficiencies in the ALJ's Finding No. 9 regarding transferability of skills and Finding No. 11 stating that Plaintiff was not disabled from October 17, 2011 through the date of decision. (*Id.* at PageID # 1864.) As to these Findings, Plaintiff merely incorporates the arguments made as to other Findings. Because Plaintiff failed to develop a specific argument as to Findings Nos. 9 and 11, the Court deems any

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. § 404.1509 (2018).

5

issue with respect to these Findings waived. *See United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997)); *Rice v. Comm'r of Soc. Sec.*, 169 Fed. App'x 452, 454 (6th Cir. 2006). Plaintiff's remaining arguments regarding Findings Nos. 5 and 10 are addressed below.

### 1. Finding No. 5

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. While the Plaintiff does not separate his objections to Finding No. 5, the Court has synthesized the following distinct objections from his nine-page narrative.

#### a. Credibility

Plaintiff contests the ALJ's finding that his claimed limiting effects of his symptoms are not credible. (DN 11, at PageID # 1857.) Specifically, after recounting Plaintiff's testimony and subjective complaints, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (R. at 19.) Plaintiff does not specifically highlight which portion of the ALJ's decision concerning his credibility that he disputes and instead generally remarks that "[a] reasonable mind based on the record as a whole would not find an adequate basis for this credibility conclusion." (DN 11, at PageID # 1857.) Because the Plaintiff fails to specifically and coherently state which portions of the ALJ's credibility determination constitute error, the Court declines to make his argument for him and finds the same waived. *See Layne*, 192 F.3d at 567 (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *Rice*, 169 Fed. App'x at 454.

#### b. Opinion Weight

Plaintiff objects to the weight the ALJ ascribed to the opinions of the state agency psychologists; consultative physical examiner, Dr. Urda; Plaintiff's treating therapist, Nancy Waters; and treating specialist Dr. Schoenbachler in determining Plaintiff's RFC. The RFC finding is the ALJ's ultimate determination of what a claimant can still do in a work setting despite his or her physical and mental limitations. 20 C.F.R. § 404.1545(a) (2018).

The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record. *Id*. at § (a)(3). "Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." SSR 96-5p, 61 Fed. Reg. 34,471, 34,473 (July 2, 1996) (rescinded for all claims filed on or after March 27, 2017 by Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (March 27, 2017)).[2] "Acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513 (2014). Thus, in making the RFC finding, the ALJ must (1) assign weight to the medical source statements in the record; and also (2) consider the descriptions and observations of the claimant's limitations as a result of the impairments from the claimant and the claimant's family and friends. 20 C.F.R. § 404.1545(a)(3).

The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Treating sources must be given controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "not inconsistent with the other substantial evidence in [the] case record." *Id*. (quoting 20 C.F.R.

---

[2] Because Plaintiff's claim was filed before March 27, 2017, SSR 96-5p still applies to Plaintiff's claim.

7

§ 404.1527(c)(2)) (internal quotation marks omitted). If the treating source is not given controlling weight, then the "opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Id*. (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Whatever weight the ALJ accords a treating source's opinion, he or she must set forth "good reasons" for doing so. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("The regulation requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." (citing 20 C.F.R. § 404.1527(d)(2)). Specifically, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 61 Fed. Reg. 34,490, 34,492 (July 2, 1996) (rescinded for all claims filed on or after March 27, 2017 by Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (March 27, 2017)).[3] Opinions from examining and non-examining medical sources are assessed under these same guidelines (*i.e.*, examining relationship, specialization, consistency, and supportability), but are never assessed for controlling weight. *Gayheart*, 710 F.3d at 376. The Court will address Plaintiff's objections to the weight the ALJ ascribed to different medical source opinions below.

*State Agency Psychologists*.—Plaintiff contends the ALJ improperly relied on the opinions of the state agency psychologists because they reviewed none of Plaintiff's medical records after May 28, 2014. (DN 11, at PageID # 1858.) However, Plaintiff cites to no rule or authority requiring the ALJ to ignore a medical source opinion that did not review all of a

---

[3] Because Plaintiff's claim was filed before March 27, 2017, SSR 96-2p still applies to Plaintiff's claim.

8

claimant's medical records. This is perhaps because, as noted by the Commissioner, "[t]here is no regulation or case law that requires that ALJ to reject an opinion simply because medical evidence is produced after the opinion is formed." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11–cv–828, 2013 WL 121813, at *6 (S.D. Ohio Jan. 9, 2013) (noting that "the regulations provide only that an ALJ should give more weight to an opinion that is consistent with the record as a whole" (citing 20 C.F.R. §§ 404.1527(c)(4); 416.927(c)(4))). Indeed, the ALJ explicitly noted that she assigned the state agency psychologists' opinions "great weight" because their opinions were "generally consistent with the medical evidence of record." (R. at 26.) The ALJ went on to cite to specific medical records from the period after May 2014 in support of her opinion, evidencing that she explicitly considered the very records Plaintiff complains the state agency psychologists did not. (*Id.*) Accordingly, the ALJ properly relied upon the "degree to which the opinion [was] consistent with the record as a whole" as required in her analysis of the weight to be ascribed to the state agency psychologists' opinions. *Gayheart*, 710 F.3d at 376. As the ALJ stated "good reasons" for assigning partial weight to the state agency psychologists' opinions that were based on the required factors and her decision evidences that she considered the medical evidence after May 28, 2014, the Court finds no error in the ALJ's consideration of the state agency psychologists' opinions.

*Consultative Examiner Dr. Urda.*—Plaintiff likewise contends that the ALJ erred in rejecting the evaluation of consultative examiner Dr. Urda. (DN 11, at PageID # 1859.) Specifically, Plaintiff argues that Dr. Urda had a "longitudinal picture of [Plaintiff's] problems" and that in assigning Dr. Urda's opinion little weight, the ALJ "failed to consider the record as a whole and resolve contradictions." (*Id.*) The ALJ was not required to give the opinion of Dr. Urda, a one-time examiner, controlling weight. *Gayheart*, 710 F.3d at 376. However, the ALJ

9

was required to assess Dr. Urda's opinion with reference to the relevant factors, including specialization, consistency, and supportability. *Id.*

Dr. Urda found that Plaintiff "was capable of handling objects, but was not capable of standing, sitting, or walking any type of distances." (R. at 25, 1243). Dr. Urda further found Plaintiff incapable of "pushing, pulling, or lifting more than five pounds on a continual basis" or "walking long distances or standing for long periods of time." (*Id.*) The ALJ afforded "little weight" to Dr. Urda's opinion, relying on the fact that Dr. Urda examined Plaintiff only once and stating that Dr. Urda's "opinion was inconsistent with the longitudinal medical evidence of record." (*Id.* at 25.) Specifically, the ALJ noted that while Dr. Urda examined the Plaintiff in April 2014, other treatment records from the same month and the period shortly thereafter demonstrated "no motor deficits," "normal gait," "normal muscle tone," and "5/5 muscle strength" (*Id.* at 25-26, 1250, 1260, 1294.) The ALJ also cited to treatment records from July 2015 indicating "no acute distress and no visible abnormalities of the cervical, thoracic, or lumbar spine." (*Id.* at 25, 1756.) Therefore, the ALJ properly cited to records contradicting Dr. Urda's assessment of Plaintiff's abilities, appropriately relying factors such as "the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence" as required in weighing Dr. Urda's opinion. *Gayheart*, 710 F.3d at 376. Accordingly, the Court finds no error in the ALJ's assessment of Dr. Urda's opinion.

*Therapist Nancy Waters*.—Plaintiff contends the ALJ did "not consider the record as a whole" in assessing the opinions of Plaintiff's therapist Nancy Waters. (DN 11, at PageID # 1859.) Plaintiff argues that Ms. Waters "findings are clear and consistent with the longitudinal record." (*Id.* at PageID # 1860.) As a therapist, Ms. Waters' opinion was not an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513(d), but an "other source;" therefore, the ALJ

10

was not required to give it controlling weight. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed. App'x 392, 399 (6th Cir. 2014) (citing 20 C.F.R. § 404.1513(d)). Instead, the ALJ was required to consult Ms. Waters's opinion on "key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-3p, 71 Fed. Reg. 45,593, 45,595 (Aug. 9, 2006) (rescinded as to all claims filed on or after March 27, 2017 by Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (March 27, 2017)).[4] The ALJ was required to consider and give weight to the opinion with reference to the applicable factors, including the nature, extent, length, and frequency of the relationship; whether the opinion was supported by "medical signs and laboratory findings;" and whether the opinion was consistent with the record as a whole. 20 C.F.R. §§ 404.1527(c) (2014).

Ms. Waters found that the Plaintiff had "difficulty with memory issues, staying on task, and creating order and routine in his daily life," and "reported that [Plaintiff] [was] subject to being overly influenced by other people." (R. at 27.) The ALJ ascribed Waters's opinion "some weight," calling Ms. Water's opinion "vague" and noting that the despite the limitation cited by Ms. Waters, the "medical evidence demonstrate[d] that the claimant [was] still capable of performing unskilled (simple, routine) work." (R. at 27.) The ALJ cited to other medical evidence that Plaintiff had "goal directed thought processes," "logical thought content," "intact immediate recall," "impaired short-term memory," "intact long term memory," and that Plaintiff continued to prepare meals at home and complete other household tasks. (*Id.* at 27, 1600-01.) By citing to other medical evidence the ALJ viewed as inconsistent with Waters's findings, the ALJ properly compiled with the regulations in considering the extent to which Waters's opinion was consistent with the record as a whole and was "supported by relevant evidence." *Gayheart*, 710 F.3d at 376.

---

[4] As Plaintiff's claim was filed on or before March 27, 2017, SSR 06-3p still applies to Plaintiff's claim.

11

While Plaintiff cites to other evidence in the record that he claims is inconsistent with the ALJ's assessment (DN 11, at PageID # 1860), the Court is limited to reviewing the ALJ's decision for whether the ALJ complied with all applicable rules and regulations and supported her decision with substantial evidence. *See Smith,* 893 F.2d at 108; *Cole,* 661 F.3d at 937. If the ALJ's decision is supported by substantial evidence, the Court is not even permitted to consider whether the opposite conclusion could be reached. *Crisp v. Sec. of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). As the ALJ cited to substantial evidence in support of her conclusion that Waters's opinion is inconsistent with other medical evidence in the record, the Court finds no error in the ALJ's assignment of weight to Waters's opinion.

*Treating Physician Dr. Schoenbachler*.—Plaintiff likewise argues that the ALJ erred in her assignment of weight to the opinions of his treating physician Dr. Schoenbachler. (DN 11, at PageID # 1860.) As Plaintiff's treating physician, Dr. Schoenbachler's opinions were entitled to controlling weight if those opinions were well supported by medically acceptable clinical and laboratory diagnostic techniques and were not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). Generally, if the ALJ declines to give controlling weight to a treating physician's opinion, the ALJ is required to state "good reasons" for doing so. The Court finds that there is substantial evidence to support the ALJ's decision not to give controlling weight to Dr. Schoenbachler's entire opinion.

As an initial matter, the ALJ discounted notations in Dr. Schoenbachler's treatment records that Plaintiff was "disabled," finding that this decision was reserved for the Commissioner. (R. at 27.) The ALJ correctly assigned no significant weight to these notations. "When a treating physician offers a conclusory opinion concerning a claimant's condition, the ALJ need not credit that view." *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. App'x 336, 340-41 (6th Cir. 2008) ("Thus,

when a treating physician offers an opinion on an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight.").

The ALJ also discussed at length Dr. Schoenbachler's opinion and afforded the opinion only "partial weight," concluding that the record demonstrated Plaintiff "would be capable of performing unskilled (simple, routine) tasks and sustaining an ordinary routine without supervision, on a sustained basis." (R. at 28.) In support of her conclusion, the ALJ thoroughly analyzed Dr. Schoenbachler's opinion and noted her disagreement with the portion of Dr. Schoenbachler's opinion concluding that Plaintiff "had no useful ability to maintain attention and concentration for extended periods, perform at a consistent pace, or to complete a normal workday or workweek." (R. at 28.) The ALJ noted that based on other testing in the record, progress in therapy sessions, and Plaintiff's activities over the past few years, the Plaintiff was capable of following "simple oral instructions requiring brief learning periods for two-hours segments throughout an eight-hour workday in a non-public setting." (*Id.*) The ALJ cited to intelligence testing records and memory testing records elsewhere in the record in support of her conclusion. (*Id.* at 28, 1606-1611.) The ALJ also noted that Plaintiff himself reported managing day-to-day tasks with decreased stress and reported "he felt confident in his ability to utilize his iPad and implement its use on a daily basis to handle his personal matters and those related to his household." (*Id.* at 28, 1453, 1694.) The ALJ likewise noted this was consistent with other conclusions made by Dr. Schoenbachler regarding Plaintiff's general ability to follow and carryout simple instructions, sustain an ordinary routine, get along with coworkers and peers, and maintain socially appropriate behavior, among others. (*Id.* at 27-8, 1764-65.) As the ALJ properly supported the weight she ascribed to Dr. Schoenbachler's opinion with good reasons, the Court finds the

ALJ's decision to assign only partial weight to the opinion of Plaintiff's treating physician supported by substantial evidence.

### c. Substantial Evidence Generally

Plaintiff's remaining arguments can be generally characterized as instances of Plaintiff pointing out evidence in the record that he claims contradicts the ALJ's decision. Specifically, Plaintiff contests that the ALJ's RFC finding concerning his mental abilities, arguing that the ALJ improperly "reject[ed] Plaintiff's short-term memory problems and anxiety, depression, anger, concentration, and impulse control problems." (DN 11, at PageID # 1858.)

The ALJ found that Plaintiff could "understand, remember, and carryout simple instructions requiring brief learning periods; interact appropriately with coworkers for task completion with no interaction with the public for task completion; maintain attention and concentration for two-hour segments throughout an eight-hour workday; and c[ould] adapt to routine changes gradually introduced in this setting." (R. at 18.) In support of this conclusion, the ALJ acknowledged Plaintiff's testimony that he has "crying spells and episodes of anger." (*Id.* at 19.) The ALJ cited to the fact that Plaintiff "is able to perform household chores, pay bills, drive, and run errands." (*Id.*) The ALJ referenced intelligence testing, which indicated that the Plaintiff had a full-scaled IQ score, working memory score, and general ability index scores that fell in the average range of intelligence. (*Id.* at 22.) Further, the ALJ cited to medical records documenting Plaintiff's ability to demonstrate "appropriate mood and affect, normal social engagement, and normal behavior." (*Id.* at 22, 1249-50, 1273.) The ALJ noted Plaintiff underwent additional memory testing in which he scored in the average to superior range. (*Id.* at 22, 1604-13.) The ALJ cited to records demonstrating Plaintiff continued to improve in his abilities to manage his day to day tasks and manage his affairs. (*Id.* at 23.) As referenced above, the ALJ cited to the

opinion of Plaintiff's treating physician, Dr. Schoenbachler, who found Plaintiff capable of following simple instructions, sustaining an ordinary routine, "perform[ing] activities within in a schedule and maintain[ing] regular attendance," and "get[ting] along with coworkers and peers." (*Id.* at 27.) The ALJ also relied upon the opinions of the state agency psychologists who found Plaintiff to be able to

> understand, remember, and carry out simple, familiar instructions and procedures requiring brief learning periods; concentrate and persist at simple, familiar tasks requiring independent judgment and involving minimal variations in two-hour segments; interact frequently as needed with supervisors and peers sufficiently for task completion, yet involving no significant interaction with the public on an occasional basis . . . .

(*Id.* at 26.)

The ALJ also cited to records in which Plaintiffs had small setbacks, "still occasionally get[ting] frustrated, but was more in control and was not depressed." (*Id.*) The ALJ explicitly found based on this evidence that Plaintiff "has been able to interact appropriately with his medical providers, professional advisors and family members for his medical care and business interests." (*Id.* at 24.) Plaintiff argues that the ALJ offered no explanation for why coworkers and supervisors would not trigger Plaintiff's anger, but the general public would. (DN 11, at PageID # 1858.) However, Plaintiff arguments ignores the opinions of both Dr. Schoenbachler and the state agency psychologists who found just that.

While Plaintiff attempts to create an inconsistency in the ALJ"s decision by citing to what he claims are contradictory records, the Plaintiff misunderstands the nature of this Court's review. As noted above, this Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart*, 710 F.3d at 374. In other words, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."

15

*Buxton v. Comm'r of Soc. Sec.*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Sec'y of Health and Human Servs.*, 800 F.2d 535, 545 (6th Cir. 1986)).  The Court finds that the ALJ properly supported her decision regarding Plaintiff's RFC with substantial evidence in the record including Plaintiff's medical records and the medical and other source opinions.  Accordingly, the ALJ did not err in making her RFC determination.

    2.    **Finding No. 11**

Plaintiff contends that the ALJ erred in not posing a hypothetical to the vocational expert (VE) that "fairly represent[ed] the substantial evidence on his limitations."  (DN 11, at PageID # 1864.)  Plaintiff argues that the hypothetical posed to the VE did not consider his mental limitations of focus/concentration problems, stress, anger, and memory problems.  (*Id.*)

An ALJ's hypothetical questions to a VE must "accurately portray the claimant's physical and mental impairments" in order for the ALJ to be entitled to rely on the VE's testimony.  *Hare v. Comm'r of Soc. Sec.*, 37 Fed. App'x 773, 776 (6th Cir. 2002); *see also Cline v. Comm'r of Social Security,* 96 F.3d 146, 150 (6th Cir.1996). "However, the ALJ is only required to incorporate into the hypothetical questions those limitations which have been accepted as credible." *Hare*, 37 Fed. App'x at 776; *see also Stanley v. Sec'y of Health & Human Servs.,* 39 F.3d 115, 118-19 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.").

The ALJ's hypothetical question in this case exactly paralleled the mental limitations incorporated in her RFC finding.  *Compare* R. at 91, *with id.* at 18.  Because this hypothetical accurately set forth the limitations in the RFC fashioned by the ALJ—which the Court found is supported by substantial evidence—the ALJ did not err in relying on the vocational expert's testimony.  Consequently, the ALJ's Finding No. 11 is supported by substantial evidence.

**III. CONCLUSION AND ORDER**

For these reasons, and the Court being otherwise sufficiently advised, it is **ORDERED** as follows:

(1) The final decision of the Commissioner of Social Security is **AFFIRMED**.

(2) A final judgment will be entered separately.

cc: Counsel of record